**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSE RAPHAEL,<br>Plaintiff,<br>v.<br>HERSEL H. GIDANIAN, et al.,<br>Defendants. | CIVIL ACTION NO. 3:25-CV-02047<br>(MEHALCHICK, J.) |

# MEMORANDUM

On September 23, 2025, Plaintiff Jesse Raphael ("Raphael") initiated this action by filing a complaint in the Wayne County Court of Common Pleas. (Doc. 1-5). On October 30, 2025, Defendants Hersel H. Gidanian ("Hersel") and Itzhar Gedanian ("Itzhar") (together, "Individual Defendants") removed this action to the Court. (Doc. 1). On November 13, 2025, Raphael filed the operative amended complaint against Individual Defendants and Defendant H&I Mounting Inc. ("H&I") (collectively, "Defendants"). (Doc. 5). Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction, lack of venue, improper service, and failure to state a claim. (Doc. 7). For the following reasons, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the amended complaint and, for the purposes of the instant motion, is taken as true. (Doc. 5). Individual Defendants are New York residents who operate H&I, a New York corporation with its principal place of business in New York. (Doc. 5, ¶¶ 2-4). Between 2020 and 2022, Raphael made twenty-one loans to H&I totaling $250,896.00. (Doc. 5, ¶ 16). In connection with these loans, Raphael and Individual Defendants met at Camelback Ski Resort in Monroe County, Pennsylvania to negotiate. The

loans were issued from Pennsylvania. (Doc. 5, ¶¶ 9-10). Defendants were required to send the repayment checks to Pennsylvania. (Doc. 5, ¶ 12). Defendants have not made any payments on these loans despite Raphael's demands for repayment. (Doc. 5, ¶¶ 17, 20).

## II. DISCUSSION

Defendants move to dismiss Rapheal's amended complaint for lack of personal jurisdiction, improper venue, improper service, and failure to state a claim. (Doc. 9, at 11-25). The Court will assess each basis for dismissal in turn.

### A. PERSONAL JURISDICTION

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for lack of personal jurisdiction. Like with Rule 12(b)(6) motions to dismiss, courts accept all allegations in a complaint as true when evaluating Rule 12(b)(2) motions. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). However, unlike with a Rule 12(b)(6) motion, under Rule 12(b)(2), a defendant may present an affidavit contradicting the plaintiff's allegations establishing personal jurisdiction, and once a defendant presents such an affidavit, the plaintiff "must present similar evidence in support of personal jurisdiction." *Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 556. A court may order limited discovery on the issue of personal jurisdiction and consider the evidence adduced during that discovery while deciding on a Rule 12(b)(2) motion. *See Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 572-73; *see also Bertles v. Cycle Grp.*, No. CV 18-4707, 2020 WL 1028044, at *4 (E.D. Pa. Mar. 3, 2020).

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the laws of the state in which the court sits. *Mellon Bank (E.) PSFS,*

*Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted). The forum state in this instance is Pennsylvania, and the applicable long arm statute is codified at 42 Pa.C.S. § 5322(b). This statute permits courts in Pennsylvania to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). Thus, the Court may properly exercise jurisdiction over Defendants so long as it does not violate their due process rights. *See Mellon Bank*, 960 F.2d at 1221.

With respect to this constitutional inquiry, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil*, 537 F.3d at 299-300 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

There are two types of personal jurisdiction over non-resident defendants—general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S.

408, 414–15 (1984)); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). When subject to the general jurisdiction of a state, "that [defendant] can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank*, 960 F.2d at 1221. Thus, general jurisdiction requires that the defendant's contacts with the forum state are "of the sort that approximate physical presence." *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)).

"Specific jurisdiction exists when the claim arises from or relates to [the defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414–15 n.9). To determine whether it has specific jurisdiction over a defendant, the Court must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, the Court must consider whether the defendants "purposefully directed [their] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros,* 466 U.S. at 414). Third, the Court must ensure that exercising jurisdiction "'comport[s] with fair play and substantial justice.'" *O'Connor*, 496 F.3d at 325 (quoting *Burger King*, 471 U.S. at 476).

Defendants aver that the Court lacks personal jurisdiction over them because they were residents of New York and employees of a New York corporation at all times relevant to this action and did not have sufficient contacts with Pennsylvania for the Court to retain jurisdiction. (Doc. 9, at 19-20). Defendants also present affidavits from Individual Defendants

stating that they never traveled to Pennsylvania to negotiate loan agreements or entered any loan agreements with Rapheal.[1] (Doc. 7-1; Doc. 7-2; Doc. 7-3). Raphael counters that the Court has personal jurisdiction because the negotiations regarding the loans were held in Pennsylvania. (Doc. 10, at 9-11). Raphael provides affidavits from himself and his business partner, Thomas Chappell, stating that Rapheal met with Individual Defendants in Pennsylvania to negotiate the loan agreement and under the agreement, the loans were to be repaid in Pennsylvania. (Doc. 8-1).

The parties agree that the Court does not have general jurisdiction over Defendants but dispute whether the Court has specific jurisdiction over them. (Doc. 9, at 19-23; Doc. 10, at 9-11). Accordingly, the Court must assess whether Defendants had sufficient minimum contacts with Pennsylvania for the Court to exercise jurisdiction, whether this action relates to those contacts, and whether exercising jurisdiction would comport with notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317. Regarding minimum contacts with Pennsylvania, "[m]erely entering into a contract with a resident of a forum is not always sufficient to establish [specific] personal jurisdiction over the defendant." *Penco Prods., Inc. v. WEC Mfg., LLC*, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013); *see Herbert v. Pouya*, No. 2:20-CV-1413, 2021 WL 1737463, at *3 (W.D. Pa. May 3, 2021). Instead, courts "consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d

---

[1] Defendants also ask the Court to consider contradictions between the original complaint and the amended complaint to determine that Rapheal "seeks to manufacture jurisdiction." (Doc. 9, at 20). Because Rapheal filed an amended complaint, the Court cannot consider allegations in the original complaint. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (stating "[i]f a plaintiff amends her complaint, the new pleading supersedes the old one: The original pleading no longer performs any function in the case" (citations and internal quotations omitted)).

248, 256 (3d Cir. 2001); *see Herbert v*, 2021 WL 1737463, at *3. Physical entry into the forum state to negotiate a contract can evince the minimum contacts required to establish personal jurisdiction, however, it is not required and sending communications to the forum state regarding contract negotiations can establish minimum contacts. *See Remick*, 238 F.3d at 257 (finding minimum contacts based on a defendant's electronic communications with the forum state negotiating the contract); *see also Leone v. Cataldo*, 574 F. Supp. 2d 471, 478 (E.D. Pa. 2008) (finding personal jurisdiction where a defendant physically entered the forum state to negotiate a contract and sent electronic communications to the forum state regarding contract negotiations); *see also Herbert*, 2021 WL 1737463, at *3 (finding sufficient minimum contacts where a defendant was physically present in the state when he accepted an agreement). Where a breach of contract claim arises out of a contract the defendant agreed to in the forum state and the contract was set to be at least partially performed in the forum state, the action sufficiently relates to the defendant's contacts with the state. *See Novinger's, Inc. v. A.J.D. Constr. Co.*, 376 F. Supp. 3d 445, 453 (M.D. Pa. 2019); *see also Herbert*, 2021 WL 1737463, at *5. Further, exercising personal jurisdiction over out of state defendants in a breach contract case involving a forum state contract comports with traditional notions of fair play and justice unless the defendants present arguments as to why litigating in the forum state would create undue burdens. *See Leone*, 574 F. Supp. 2d at 482-83; *see also Novinger's, Inc.*, 376 F. Supp. 3d at 453.

In the amended complaint, Rapheal alleges that Individual Defendants traveled to Pennsylvania on behalf of H&I to negotiate the pertinent loan agreements, the loans were issued from Pennsylvania, and the loans were set to be repaid in Pennsylvania. (Doc. 5, ¶¶ 9-10, 12). However, the parties present conflicting affidavits as to whether this occurred. (Doc.

7-1; Doc. 7-2; Doc. 7-3; Doc. 8-1). The Court may consider the contents of the parties' affidavits. *See Isaacs v. Arizona Bd. of Regents,* 608 F. App'x 70, 74 (3d Cir. 2015) (nonprecedential) (stating "[i]f the defendant contradicts the plaintiff's allegations through opposing affidavits, as the defendants did here, a plaintiff must present particular evidence in support of personal jurisdiction"); *see also Chocolate Confectionary*, 602 F. Supp. 2d at 559 (considering affidavits filed by the parties). Where both parties submit affidavits regarding personal jurisdiction and no additional evidence, "the [C]ourt is bound to accept [the plaintiff's affidavits'] representations and defer final determination as to the merits of the allegations until a pretrial hearing or the time of trial." *Chocolate Confectionary*, 602 F. Supp. 2d at 557; *see Herbert*, 2021 WL 1737463, at *1.

Because there are conflicting affidavits and no additional evidence, the Court must accept as true that Individual Defendants traveled to Pennsylvania on behalf of H&I to negotiate the loan agreements and that the loans were issued from and set to be repaid in Pennsylvania.[2] (Doc. 5, ¶¶ 9-10, 12; Doc. 8-1); *see Chocolate Confectionary*, 602 F. Supp. 2d at 557; *see also Herbert*, 2021 WL 1737463, at *1. Defendants' alleged physical entry into Pennsylvania to negotiate the loans and the loan agreements' connection to Pennsylvania are sufficient to establish minimum contacts. *See Remick*, 238 F.3d at 257; *see also Leone*, 574 F. Supp. 2d at 478; *see also Novinger's, Inc.*, 376 F. Supp. 3d at 452. The cause of action arises out

[2] The Court declines to grant expedited jurisdictional discovery or schedule an evidentiary hearing on the issue of personal jurisdiction at this time because for the reasons discussed *infra* Section III.D, the Court dismisses the amended complaint without prejudice. The parties may request jurisdictional discovery or an evidentiary hearing after Rapheal files an operative second amended complaint. *See Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-CV-00435, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014) (denying a request for jurisdictional discovery where a complaint was otherwise subject to dismissal but noting that the parties could re-request discovery if plaintiff filed an amended complaint curing the original complaint's deficiencies).

of these contacts because Rapheal alleges Defendants breached the agreements Individual Defendants allegedly negotiated in Pennsylvania and failed to send repayments to Pennsylvania. (Doc. 5, ¶¶ 9-10, 12; Doc. 8-1); *see Novinger's, Inc*, 376 F. Supp. 3d at 453; *see also Herbert*, 2021 WL 1737463, at *5. Exercising jurisdiction also comports with notions of fair play and substantial justice because Defendants present no arguments as to why litigating in this case in Pennsylvania would be unduly burdensome. *See Leone*, 574 F. Supp. 2d at 482-83; *see also Novinger's, Inc.*, 376 F. Supp. 3d at 453. The Court **DENIES** Defendants motion to dismiss on the basis of personal jurisdiction (Doc. 7) **without prejudice** to Defendants ability to file a renewed motion after jurisdictional discovery or an evidentiary hearing.

B. VENUE

Under Federal Rule of Civil Procedure 12(b)(3), a plaintiff may move to dismiss for improper venue. However, transfer is generally the appropriate remedy to improper venue rather than dismissal and courts have the discretion to transfer a matter where they find venue improper. *See Holland v. King Knob Coal Co.*, 87 F. Supp. 2d 433, 440 (W.D. Pa. 2000); *see also Anderson v. TransUnion, LLC*, No. CV 17-1813, 2018 WL 334495, at *1 (E.D. Pa. Jan. 9, 2018). When evaluating motions to dismiss or transfer for improper venue, a court must accept the allegations in the complaint as true. *See Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005); *see also Anderson*, 2018 WL 334495, at *1. "The parties may submit affidavits in support of their positions [regarding venue], and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft*, 355 F. Supp. 2d at 762. Like with challenges to personal jurisdiction, a court may order limited discovery or schedule an evidentiary hearing on the issue of venue. *See Hufnagel v. Ciamacco*,

281 F.R.D. 238, 241 (W.D. Pa. 2012) (evaluating personal jurisdiction and venue together after conducting limited discovery and holding a hearing).

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a).“‘The decision to transfer is in the court’s discretion, but a transfer is not to be liberally granted.’” *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Handlos v. Litton Indus., Inc.*, 304 F. Supp. 347, 352 (E.D. Wis. 1969)). A court adjudicating a challenge to venue must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division “where [the case] might have been brought.” 28 U.S.C. § 1404(a); *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If venue is proper in the proposed district, courts consider the following non-exhaustive list of factors first outlined by the Third Circuit in *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879-80 (3d Cir. 1995):

> (1) the plaintiff’s choice of forum; (2) the defendant’s preference; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative court congestion in the competing courts; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; (12) and the familiarity of the trial judge with the applicable state law.
> (2)

*High River*, 353 F. Supp. 2d at 491 (citing *Jumara*, 55 F.3d at 879-80).

The first six factors are considered the “private interest factors,” while the last six factors are the “public interest factors.” *See Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No.

3:23CV1500, 2024 WL 816619, at *3-8 (M.D. Pa. Feb. 27, 2024). The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

Defendants aver that the Court should dismiss the amended complaint for improper venue because none of the Defendants are residents of Pennsylvania and never entered a loan agreement with Rapheal. (Doc. 9, at 23). Defendants argue that venue is proper in an unspecified district in New York. (Doc. 9, at 23). Rapheal counters that venue is proper in the Middle District of Pennsylvania because the loan agreements were agreed to and issued in the Middle District and were to be repaid in the Middle District. (Doc. 10, at 13-14).

Although Defendants move to dismiss for improper venue, transfer is generally the appropriate remedy for improper venue rather than dismissal and the Court has discretion to transfer the case, rather than dismiss it, if it finds venue improper. *See Holland*, 87 F. Supp. 2d at 440; *see also Anderson*, 2018 WL 334495, at *1. When evaluating a challenge to venue, a court must evaluate 1) whether venue would be proper in the defendant's preferred jurisdiction, 2) whether the private *Jumara* factors favor transfer, and 3) whether the public *Jumara* factors favor transfer. *See Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001); *see also Alers v. Pennsylvania Higher Educ. Assistance Agency*, No. CV 20-2073, 2022 WL 3722085, at *2 (E.D. Pa. Aug. 29, 2022).

**1. Venue would be proper in either New York or the Middle District of Pennsylvania.**

Under 28 U.S.C. § 1404(a), when a Defendant challenges venue, the Court must first determine "whether venue would be proper in the transferee district." *Weber*, 155 F. Supp. 2d at 284 (citing *Jumara*, 55 F. 3d at 879). Venue is proper in any district "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C . § 1391(b)(1); *see also L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 594 (D. Del. 2008) (noting that venue was proper in Arizona because the defendants were incorporated in Arizona and residents of Arizona). In breach of contract actions, venue is also proper where the contract was formed, partially performed, or breached. *See Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 439 (D.N.J. 2015); *see also Domtar AI Inc. v. J.D. Irving, Ltd.*, No. CIV.A. 14-0727, 2014 WL 1679713, at *3 (E.D. Pa. Apr. 25, 2014) (finding that venue would be proper in Georgia because the agreement was negotiated, drafted, and agreed to in Georgia).

Individual Defendants reside in New York and H&I is a New York corporation. (Doc. 5, ¶¶ 2-4). Individual Defendants reside in Nassau County, which is part of the Eastern District of New York, and H&I is located in the Manhattan, which is part of the Southern District of New York. (Doc. 5, ¶¶ 3-4); *see Watson v. Bongiorno*, No. 25-CV-8506, 2025 WL 3219453, at *1 (S.D.N.Y. Oct. 22, 2025) (noting that Nassau County is part of the Eastern District of New York); *see also di Santo v. New York State Unified Ct. Sys.*, No. 1:25-CV-6674, 2025 WL 2988900, at *1 n.1 (S.D.N.Y. Sept. 12, 2025) (noting that Manhattan is part of the Southern District of New York). Accordingly, venue would be proper in either the Eastern or Southern Districts of New York. *See* 28 U.S.C.A. § 1391(b)(1); *see also L'Athene, Inc.*, 570 F. Supp. 2d at 594. However, according to the amended complaint and Rapheal's affidavits, the

loan agreements were negotiated in the Middle District of Pennsylvania, the loans were issued from the Middle District, and the repayment checks were to be sent to the Middle District.[3] (Doc. 5, ¶¶ 9-12; Doc. 8-1). Thus, venue is also proper in the Middle District of Pennsylvania because the contract was negotiated, formed, and set to be partially performed in Pennsylvania. *See Ferratex, Inc.*, 121 F. Supp. 3d at 439; *see also Domtar AI Inc.*, 2014 WL 1679713, at *3.

**2. The private *Jumara* factors weigh against transfer.**

Since this case could have been brought in either the Middle District of Pennsylvania or in New York, the Court must consider the private interest factors as outlined in *Jumara*, 55 F. 3d at 879. The Court must weigh (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Jumara*, 55 F. 3d at 879. These factors relate to the "convenience of the parties and witnesses," as well as "'all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petroleum Serv. Co.*, 2024 WL 816619, at *3 (quoting *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

[3] The Court notes that Defendants deny that Individual Defendants traveled to Pennsylvania to negotiate the loan agreements or entered any loan agreement with Rapheal and request an evidentiary hearing on the matter. (Doc. 7, ¶ 31). For the reasons discussed *infra* Section III.D, the Court dismisses the amended complaint without prejudice. Because there is no longer an operative complaint, the court **DENIES** Defendants' request for a hearing **without prejudice** to their ability to renew their request once Rapheal files an operative second amended complaint. *See Abramson* , 2014 WL 2938626, at *9 (noting that evidentiary challenges are moot where there is no longer an operative complaint).

A plaintiff's choice of forum "is a paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25; *see Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479 (D. Del. 2011). The first factor weighs heavily against transfer where the plaintiff is a resident of the district in which they brought the action. *See Intell. Ventures I LLC*, 797 F. Supp. 2d at 479 (weighing the first factor heavily against transfer because a Delaware corporation brought the action in the District of Delaware); *see also Ferratex, Inc.*, 121 F. Supp. 3d at 440 (weighing the first factor less heavily where the plaintiff was not a resident of the district that they brought the action in). Here, Rapheal is a resident of the Middle District of Pennsylvania. (Doc. 5, ¶ 1). Thus, the first factor weighs heavily against transfer. *See Intell. Ventures I LLC*, 797 F. Supp. 2d at 479.

The second factor weighs in favor of transfer where a defendant is a resident of the district they wish to transfer to. *See Ferratex, Inc.*, 121 F. Supp. 3d at 440; *see also Intell. Ventures I LLC*, 797 F. Supp. 2d at 479. However, the second factor "in reality does little more than frame the issue" and there is generally a "presumption that the plaintiff's preference governs." *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018); *see Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at *4 (M.D. Pa. Apr. 21, 2021) (finding that the second factor is generally neutral); *see also Penn Warranty Corp. v. Edwards*, No. 3:17-CV-01860, 2018 WL 994669, at *4 (M.D. Pa. Feb. 21, 2018) (stating "while Defendant's preference to litigate this case in the Eastern District of Virginia weighs in favor of transfer, I do not provide it equal weight to that of Plaintiff's preference"). Defendants prefer to litigate this case in their home state of New York. (Doc. 9, at 23). While Defendants' preference is relevant, it does not outweigh Rapheal's preference. *See Edwards*, 313 F. Supp.

3d at 622; *see also* *Etheridge*, 2021 WL 1564336, at *4; *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4.

Regarding the third factor, where the claims arose, in breach of contract actions, courts consider where the contract was formed. *See* *Ferratex, Inc.*, 121 F. Supp. 3d at 441; *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4. However, courts must also consider where a contract was to be performed. *See* *Ferratex, Inc.*, 121 F. Supp. 3d at 441 (finding the third factor weighed against transfer where an agreement was made in the plaintiff's preferred district, partial performance was to be completed in that district, and payments were to be made in that district); *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4 (finding the third factor neutral where the parties formed the agreement in the plaintiff's preferred district but most performance was to be done in the defendant's preferred district). According to Rapheal, the contract was negotiated and formed in the Middle District and payments were to be made in the Middle District. (Doc. 5, ¶¶ 9-12; Doc. 8-1). The Court acknowledges that as New York residents, Defendants would presumably send payments from their place of business in New York. (Doc. 5, ¶¶ 2, 4). However, given that the contract was formed and to be partly performed in the Middle District, the third factor weighs in against transfer. *See* *Ferratex, Inc.*, 121 F. Supp. 3d at 441; *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4.

The fourth and fifth factors, convenience of the parties and witnesses, are neutral where one party and their witnesses would have to travel regardless of outcome and neither party presents reasons why they would be more inconvenienced by travel. *See* *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 608 (D.N.J. 2010) (finding the fifth factor neutral where "none of the parties have asserted that any witness would be unavailable in either forum and it appears that the inconvenience to the parties and witnesses involved is relatively

even"); *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4 (finding the fourth factor neutral where the parties did not present argument why travel would be especially inconvenient for them or why the other party is better suited to travel for litigation). If the Court transfers this matter, Rapheal will have to travel to New York, and if the Court retains this matter, Defendants will have to travel to Pennsylvania. Neither party presents arguments as to why they or their witnesses would be inconvenienced by travel and thus, the Court finds the fourth and fifth factors neutral. *See* *Santi*, 722 F. Supp. 2d at 608; *see also* *Penn Warranty Corp.*, 2018 WL 994669, at *4.

The final factor, location of books and records, is neutral where the parties do not provide any arguments as to why relevant documents and other records cannot be produced digitally. *See* *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008); *see also* *Petroleum Serv. Co.*, 2024 WL 816619, at *6. Neither party presents such an argument, and thus, the final factor is neutral. Overall, the private *Jumara* factors weigh against transfer.

**3. The public *Jumara* factors weigh slightly against transfer.**

After evaluating the private *Jumara* factors, courts must evaluate the public *Jumara* factors which include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.
>
> *Ferratex, Inc.*, 121 F. Supp. 3d at 442 (citing *Frato v. Swing Staging, Inc.*, No. CIV.A. 10-5198, 2011 WL 3625064, at *6 (D.N.J. Aug. 17, 2011)).

The public interest factors are generally neutral where neither party addresses them. *See* *Ferratex, Inc.*, 121 F. Supp. 3d at 442 (finding factors neutral where the parties did not present any argument); *see also* *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*,

575 F. Supp. 3d 532, 541 (E.D. Pa. 2021) (finding the same); *see also Alers*, 2022 WL 3722085, at *5-6 (same). However, states have an interest in contracts formed in their states. *See Ferratex, Inc.*, 121 F. Supp. 3d at 442 (finding New Jersey had an interest in contract disputes regarding contracts formed in New Jersey). Because neither party addresses the public interest factors, the factors are mostly neutral but weigh slightly in against transfer because this case involves a contract allegedly formed and to be partly performed in Pennsylvania. (Doc. 5, ¶¶ 9-12); *see Ferratex, Inc.*, 121 F. Supp. 3d at 442. Accordingly, the Court finds the *Jumara* private and public factors weigh against transfer and **DENIES** Defendants motion to dismiss to the extent it relies on improper venue **without prejudice** to Defendants' ability re-raise the issue after conducting discovery or after an evidentiary hearing. (Doc. 7).

C. Improper Service

Defendants aver that the Court should dismiss all claims against H&I for improper service. (Doc. 9, at 24). According to Defendants, the initial complaint only named Individual Defendants, and Rapheal never served H&I after adding it as a defendant. (Doc. 9, at 24). Rapheal counters that the original complaint listed the Defendants as "Hersel H. Gidanian, and Itzhar C. Gedanian d/b/a/ H & I Mounting" and served the complaint on Individual Defendants who are the President and Vice President of H&I. (Doc. 10, at 14-15). Rapheal argues that serving a corporation's executives is sufficient under Pennsylvania rules of service. (Doc. 10, at 14-15).

A plaintiff may move to dismiss an action for improper service under Federal Civil Procedure Rule 12(b)(5). Because service of process occurs after filing a complaint, the Court may consider facts outside of the complaint when evaluating a motion to dismiss due to improper service such as affidavits of service or the defendant's own statements regarding

how they received service. *See Reed v. Weeks Marine, Inc.*, 166 F. Supp. 2d 1052, 1056 (E.D. Pa. 2001) (considering the defendant's own statements regarding how it received service when denying the defendant's motion to dismiss for improper service of process); *see also Borah v. Monumental Life Ins. Co.*, No. CIV.A.04-3617, 2005 WL 83261, at *1 (E.D. Pa. Jan. 14, 2005) (stating "[a] court may look outside of the pleadings to determine whether service was proper"). "[I]f an amended complaint asserts claims against a new party, the plaintiff must serve the new party with a summons and the amended complaint in compliance with [Federal Civil Procedure] Rule 4." *Linwood Trading Ltd. v. E.S. Recycling Express Corp.*, No. CV 14-6332, 2017 WL 1882490, at *4 (D.N.J. May 9, 2017); *see also Cotton v. Allegheny Cnty.*, No. CIV.A. 11-969, 2012 WL 4755030, at *6 (W.D. Pa. Oct. 4, 2012).

Under Federal Civil Procedure Rule 4(e)(1), a plaintiff may effectuate service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4. Under both Pennsylvania and New York law, a plaintiff may effectuate service on a corporation or similar entity by making service upon a corporate officer, executive, or an authorized agent of the corporation. *See* Pa.R.C.P. No. 424 (1); *see also* N.Y. C.P.L.R. 311 (a)(1). Federal Civil Procedure Rule 4(h) also allows a plaintiff to serve a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h). Under these rules, a plaintiff may serve a corporation by serving its president. *See Stout St. Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 648 (E.D. Pa. 2012); *see also Saunders v. GFS Ent. Grp.*, LLC, No. CV 16-1062, 2019 WL 3426273, at *2 (W.D. Pa. July 30, 2019). Under both Rule 4(h) and relevant state rules, the plaintiff bears

the burden of showing that they properly served the corporation through an officer or agent. *See McKinnis v. Hartford Life*, 217 F.R.D. 359, 361 (E.D. Pa. 2003). Where a plaintiff makes a reasonable mistake in serving a corporation, dismissal is generally not appropriate where the corporate defendant received notice of the action. *See McKinnis*, 217 F.R.D. at 361-62 (finding service improper but denying a motion to dismiss for improper service); *see also Bond v. Laser Spine Inst.*, LLC, No. CIV.A 10-1086, 2010 WL 3212480, at *4 (E.D. Pa. Aug. 11, 2010) (stating "[d]ismissal is not proper where the corporation has received notice and is able to respond in a timely fashion with a motion to dismiss"). In such circumstances, the plaintiff should be afforded the opportunity to perfect service. *See McKinnis*, 217 F.R.D. at 361-62; *see also Bond v*, 2010 WL 3212480, at *4.

The initial complaint did not name H&I as a defendant. (Doc. 1-3, at 3). While the complaint states that Individual Defendants are "doing business as H & I Mounting," it also specifies that it is naming Individual Defendants as "individuals" and does not list H&I, the corporation, as a separate defendant. (Doc. 1-3, at 3). The amended complaint added H&I as a defendant and Rapheal served the amended complaint on Individual Defendants through their counsel. (Doc. 5; Doc. 5-2). Hersel swears in an affidavit that he is the president of H&I. (Doc. 7-3, at 2). Based on Defendants' own affidavit and Rapheal's certificate of service, Rapheal served H&I the amended complaint by serving it on an executive. (Doc. 5-2; Doc. 7-3, at 2); *see Stout St. Funding*, 873 F. Supp. 2d at 648; *see also Saunders*, 2019 WL 3426273, at *2. The Court notes that there is no evidence in the record that Rapheal ever served Defendants with a summons naming H&I, and Rapheal was required to serve H&I with "a summons and the amended complaint in compliance with Rule 4." *Linwood Trading Ltd.*, 2017 WL 1882490, at *4; *see also Fontanez v. Hicks*, No. 220CV20286KSHCLW, 2021 WL 1608902,

at *3 (D.N.J. Apr. 23, 2021). However, such an error does not warrant dismissal because H&I had notice of this action, as evinced by the instant motion. *See McKinnis*, 217 F.R.D. at 361; *see also Bond v*, 2010 WL 3212480, at *4. Accordingly, the Court **DENIES** Defendants' motion to dismiss for improper service. (Doc. 7). For the reasons discussed *infra* Section III.D, the Court dismisses the amended complaint without prejudice. After Rapheal files a second amended complaint, Rapheal is **GRANTED** leave to perfect service by serving summons and the second amended complaint on H&I.

D. FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The Court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

In the amended complaint, Rapheal alleges Defendants breached a loan agreement by not paying him back. (Doc. 5, ¶¶ 18-26). Defendants aver that Rapheal fails to state a claim for breach of contract because he does not allege the specific terms and conditions of the

contract. (Doc. 9, at 20-21, 24-25). Defendants further argue that if the Court applies New York law, Rapheal's claims are barred by the statute of frauds and if the Court applies Pennsylvania law, Rapheal's claims are barred by the statute of limitations. (Doc. 9, at 21-23). Rapheal alleges he states a claim for breach of contract because he alleges that Defendants orally agreed repay loans and accepted checks. (Doc. 10, at 12-13).

Before addressing whether Rapheal states a claim for breach of contract, the Court must first determine what law applies. Defendants aver that choice of law is mostly inconsequential because they are entitled to dismissal under either Pennsylvania or New York law. (Doc. 9, at 20-23). Rapheal avers that Pennsylvania law applies because the contract was formed in Pennsylvania. (Doc. 10, at 12-13). "Federal courts exercising diversity jurisdiction apply the choice of law rules of the state in which the District Court sat." *See Livornese v. Med. Protective Co.*, 136 F. App'x 473, 477 n.4 (3d Cir. 2005) (nonprecedential). Under Pennsylvania choice of law principles, the law of the state where the contract was formed and set to be performed applies in breach of contract actions unless the contract has a choice of law provision. *See Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018) (stating "Pennsylvania law applies because Pennsylvania is where the agreement was formed"); *see also Glob. Sourcing LLC v. DBDK Int'l, LLC*, No. CV 17-325, 2018 WL 723098, at *4 (E.D. Pa. Feb. 5, 2018) (applying Pennsylvania law because a contract was mostly formed and to be performed in Pennsylvania). Here, there is no choice of law provision, and the contract was allegedly formed and to be mostly performed in Pennsylvania. (Doc. 5, ¶¶ 9-12). Thus, the Court will apply Pennsylvania law. *See Styczynski*, 340 F. Supp. 3d at 541; *see also Glob. Sourcing LLC*, 2018 WL 723098, at *4.

Pennsylvania breach of contract claims have a four-year statute of limitations which accrue at the time of the alleged breach. *See SpiriTrust Lutheran v. Wagman Constr.*, Inc., 314 A.3d 894, 906 (Pa. Super. Ct. 2024); *see also Wright v. Ally Fin.*, No. 2:24-CV-01532, 2025 WL 2662815, at *3 (W.D. Pa. Sept. 17, 2025). To state a claim for breach of contract "a plaintiff [must] plead (1) the existence of a contract (including its essential terms), (2) a breach of the contract, and (3) damages." *Cessna v. Rea Energy Coop., Inc.*, 753 F. App'x 124, 1128 (3d Cir. 2018) (nonprecedential). "A claim for breach of an oral contract requires proof of the same elements as breach of a written contract." *Belnick, Inc. v. TBB Glob. Logistics, Inc.*, 106 F. Supp. 3d 551, 563 n.2 (M.D. Pa. 2015). However, where a breach of contract claim involves an oral contract, "clarity is particularly important" regarding details such as when an agreement was made and claims may be subject to dismissal where the plaintiff fails to allege such details. *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006); *see Zhang v. CSL Behring LLC*, No. 23CV2658, 2024 WL 493427, at *3 (E.D. Pa. Feb. 8, 2024) (dismissing a breach of contract claim based on an oral agreement where the plaintiff did not allege details about the agreement such as when the parties reached the agreement).

The essential terms of a contract include the "time or manner of performance." *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006); *see Nicholson v. Sheetz Inc.*, No. 1:19-CV-166, 2020 WL 4676354, at *6 (W.D. Pa. Aug. 12, 2020). Where a plaintiff fails to allege the essential terms of a contract, the complaint is subject to dismissal both due to that failure itself and because the Court cannot determine whether the defendant breached a specific duty under the contract. *See Brown v. Am. Airlines, Inc.*, 723 F. Supp. 3d 411, 419 (E.D. Pa. 2024) (dismissing a breach of contract claim where the plaintiff failed to "allege the manner in which the conduct of Defendant's employees breached [the pertinent contract]"); *see also Zhang*, 2024

WL 493427, at *5 (finding a plaintiff failed to allege a defendant breached a contract by failing to make a payment because it was unclear from the complaint whether the defendant actually owed the plaintiff any payments); *see also Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*, No. 1:24-CV-00565, 2025 WL 2670517, at *7 (M.D. Pa. Sept. 17, 2025) (finding a counterclaimant failed to state a claim where a they did not allege the specific duties under an oral agreement).

The amended complaint does not state what legal theory underlines its cause of action, but the parties agree that this is a breach of contract case. (Doc. 5; Doc. 9, at 20-21, 24-25; Doc. 10, at 12-13). The amended complaint is vague about the nature and terms of the alleged agreement between Rapheal and Defendants. (Doc. 5). While Rapheal now claims that he had an oral agreement with Defendants, the amended complaint both alleges that the parties came to an oral agreement and references a "Note" between the parties which is not attached to or described in the amended complaint. (Doc. 5, ¶¶ 19, 25; Doc. 10, at 12-13). Further, while Rapheal alleges that he negotiated and made an agreement in Pennsylvania, Rapheal does not allege when the parties came to a final agreement. (Doc. 5, ¶¶ 9, 12). The amended complaint lists various checks that Rapheal allegedly issued to H&I as loans but contains no details regarding when or under what conditions these loans were to be repaid, what the loans were for, or if Rapheal issued the checks as part of one agreement or multiple. (Doc. 5, ¶ 16). Rapheal initiated this action in 2025, and several of the checks Rapheal allegedly issued Defendants are from 2020, over four years before Rapheal filed this action. (Doc. 1; Doc. 5, ¶ 16). If payment on these loans was due within four years of the date Rapheal filed this action, Rapheal's claims would be timely but if it was not, the claims are not timely. *See SpiriTrust Lutheran*, 314 A.3d at 906; *see also Wright*, 2025 WL 2662815, at *3. The Court cannot assess

whether all of Rapheal's claims are timely because the amended complaint contains no allegations regarding when payments were due, and Rapheal only alleges that he demanded payment on an unspecified date. (Doc. 5, ¶ 17).

Even if all of Rapheal's claims are timely, Rapheal fails to state a claim because he does not allege when he and Defendants reached an agreement or the essential terms of the agreement such as when or under what conditions Defendants were obligated to repay the loans. (Doc. 5); *see* *Lackner*, 892 A.2d at 31 (noting that "time or manner of performance" are essential terms of a contract); *see also* *Zhang*, 2024 WL 493427, at *3 (finding a plaintiff failed to state a claim for breach of contract based on an oral agreement where the plaintiff did not include details such as the date of the agreement). Rapheal further fails to state a claim because the Court cannot infer that Defendants breached the alleged agreement without knowing details such as whether Defendants' payments were due. *See* *Brown*, 723 F. Supp. 3d at 419; *see also* *Zhang*, 2024 WL 493427, at *5; *see also* *Powerhouse Commc'ns, LLC*, 2025 WL 2670517, at *7. Accordingly, the Court **GRANTS** Defendants' motion to dismiss for failure to state a claim. (Doc. 7).

## III. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (nonprecedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

Courts permit plaintiffs to amend breach of contract claims where the plaintiffs fail to adequately allege the essential terms of an agreement or the nature of the defendant's alleged breach. *See Brown*, 723 F. Supp. 3d at 419; *see also Powerhouse Commc'ns, LLC*, 2025 WL 2670517, at *8. Rapheal could file an amended complaint clarifying when he made the alleged agreement with Defendants and the essential terms of the agreement, such as when repayment was due. Accordingly, the Court **GRANTS** Rapheal twenty-one days to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. (Doc. 7). Defendants' motion is **GRANTED** regarding Rapheal's failure to state a claim, and the complaint is **DISMISSED without prejudice**. Rapheal is **GRANTED** leave to file a second amended complaint curing the deficiencies outlined herein. Failure to do so may result in dismissal of this action. Defendants' motion to dismiss is **DENIED** regarding Defendants' challenges to personal jurisdiction and venue **without prejudice** to Defendants' ability to re-raise the issues after limited discovery or an evidentiary hearing which Defendants may request after Rapheal files a second amended complaint. Defendants' motion to dismiss is further **DENIED** regarding improper service. After Rapheal files a second amended complaint, Rapheal is **GRANTED** leave to perfect service by serving summons and the second amended complaint on H&I. An appropriate Order follows.

**BY THE COURT:**

**Dated: August 3, 2026**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**